Scharf-Norton Ctr. for Const. Litigation
GOLDWATER INSTITUTE
Nicholas C. Dranias
500 E. Coronado Rd.
Phoenix, AZ 85004
P: (602) 462-5000/F: (602) 256-7045
ndranias@goldwaterinstitute.org
Attorneys for Amicus Goldwater Institute, et al.

Timothy C. Fox
Gough, Shanahan, Johnson & Waterman
33 South Last Chance Gulch
P.O. Box 1715
Helena, MT 59624-1715
Tel: 406-442-8560
Fax: 406-449-0208
tcf@gsjw.com
Local counsel for Amicus Goldwater Institute, et al.

**IN THE UNITED STATES DISTRICT
COURT DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| MONTANA SHOOTING SPORTS ASSOCIATION, SECOND AMENDMENT FOUNDATION, Inc., and GARY MARBUT,<br><br>Plaintiffs,<br><br>vs.<br><br>ERIC H. HOLDER, JR., ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 09-CV-00147-DWM-JCL<br><br>**AMICUS BRIEF OF THE GOLDWATER INSTITUTE, 1 U.S. CONGRESSMAN, 8 ARIZONA SENATORS, 26 ARIZONA REPRESENTATIVES, 2 ARIZONA POLITICAL ORGANIZATIONS AND 1 ARIZONA BOOK PUBLISHER OPPOSING DEFENDANT'S MOTION TO DISMISS** |

## Introduction

This case does not involve a mere clash between state and federal law.   It involves the federal government's effort to quash an exercise of state sovereignty that directly serves the structural purpose of federalism in our compound republic—the protection of individual liberty guaranteed by the Bill of Rights. Such federal overreaching must be rejected if the vertical separation of powers established by the letter and spirit of our Constitution means anything.

## Argument

The Montana Firearms Freedom Act establishes a less restrictive regulatory regime than federal law for intrastate firearms manufacturing and sales.  (Motion to Dismiss Memo., pp. 2-7.)  The Act thereby facilitates the exercise of the individual right to keep and bear arms under the Second Amendment by promising to enhance the availability of firearms within the State of Montana.  *See generally District of Columbia v. Heller*, 128 S. Ct. 2783 (2008).  And when coupled with the foregoing Second Amendment right, the personal right to engage in firearms manufacturing and sales under the Act should be regarded as among the rights reserved to the people under the Ninth Amendment.  *Compare Massachusetts v. Upton*, 466 U.S. 727, 737 (1984) (Stephens, J., concurring) (observing that Ninth Amendment protects rights created by state law); *Acme, Inc. v. Besson*, 10 F. Supp. 1, 6 (D. N.J. 1935) (indicating the "local, intimate, and

close relationships of persons and property which arise in the processes of manufacture" are protected by the Ninth Amendment); *Magill v. Brown*, 16 F. Cas. 408, 428 (E.D. Pa. 1833) (observing "personal rights are protected by . . . the 9th amendment") *with Slaby v. Fairbridge*, 3 F. Supp. 2d 22, 30 (D.D.C. 1998) (observing "[t]he Ninth Amendment is not a source of substantive rights, *unless it is coupled with the denial of other fundamental rights*") (emphasis added) (citing *United States v. Vital Health Products, Ltd.*, 786 F. Supp. 761, 777 (E.D. Wis. 1992), *aff'd United States v. LeBeau*, 985 F.2d 563 (7th Cir. 1992)).  In short, Montana has exercised its sovereign police powers to facilitate the ability of individuals to exercise their enumerated constitutional rights within state boundaries.

     None of the precedent cited by Defendant upholds federal preemption of state laws that facilitate the intrastate exercise of *enumerated* constitutional rights. This proceeding thus presents a case of first impression.  Plaintiffs are therefore entitled to fresh judicial scrutiny of the federal government's asserted supremacy over purely intrastate firearms manufacturing and sales.  As discussed below, this entitlement precludes granting Defendant's Rule 12(b)(6) motion to dismiss.[1]

---

[1] This brief does not address Defendant's Rule 12(b)(1) motion.

**I.**     **Defendant's Rule 12(b)(6) motion to dismiss should be denied because the "substantial affect" test does not apply to Plaintiffs' cause of action.**

Under Fed. R. Civ. P. 8(a) and 12(b)(6), the court should construe the Complaint in the light most favorable to Plaintiffs, assume that all well-pled facts are true, and draw all reasonable inferences in favor of sustaining Plaintiffs' cause of action. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). Applying this legal standard, the court should assume Plaintiffs will engage in exclusively intrastate firearms manufacturing and sales activities under the authority of the Montana Firearms Freedom Act. Such activities would not involve "the use of the channels of interstate commerce" or "the instrumentalities of interstate commerce, or persons or things in interstate commerce." *Quoting United States v. Lopez*, 514 U.S. 549, 558-59 (1995). Therefore, among the three tests advanced by Defendant to determine whether federal regulation of intrastate firearms manufacturing and sales activities falls within the scope of the Commerce Clause, only the "substantial affect" test should be regarded as contestable on the face of the pleadings pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6). *Barker*, 584 F.3d at 824.

The "substantial affect" test, however, does not govern cases, such as this one, that allege a direct clash between principles of state sovereignty and the federal government's asserted power to regulate intrastate activities. *Gonzales v. Raich*, 545 U.S. 1, 39 (2003) (Scalia, J., concurring). This is because the

"substantial affect" test determines whether the *Necessary and Proper Clause* authorizes the federal regulation in question under the Commerce Clause. *Raich*, 545 U.S. at 22 (citing *Wickard v. Filburn*, 317 U.S. 111 (1942)); *id.* at 34-35 (Scalia, J., concurring). The "substantial affect" test, like the Necessary and Proper Clause itself, cannot sustain exertions of federal power that are inconsistent with the "letter and spirit of the constitution" or otherwise "prohibited." *Id.* at 39 (Scalia, J. concurring) (citing *McCulloch v. Maryland*, 17 U.S. 316, 421 (1819)). Where, as here, federal preemption is challenged as inconsistent with the "letter and spirit of the constitution" or otherwise "prohibited," the court must independently analyze the text, structure and purpose of the constitution to evaluate whether the exertion of federal power is within the scope of the Necessary and Proper Clause. *Id.* (citing *Printz v. United States*, 521 U.S. 898 (1997); *New York v. United States*, 505 U.S. 144 (1992)). As discussed below, this analysis precludes granting Defendant's Rule 12(b)(6) motion to dismiss.

**II.     Defendant's Rule 12(b)(6) motion to dismiss should be denied because Plaintiffs' claim that federal preemption of the Montana Firearms Freedom Act violates the "letter and spirit of the constitution" is viable.**

The letter and spirit of the constitution guarantees the preservation of state sovereignty by requiring the maintenance of a "compound republic" that vertically separates powers between the states and the federal government. *See* U.S. Const. art. I, § 8 (enumerating congressional powers); *id.* art. I, § 10 (limiting powers of

Page 5 of 10

the states); *id.* art. IV, § 4 (guaranteeing states a republican form of government);

*id.* art. V (incorporating states and Congress into the amendment process); *id.* art.

VI (making federal law supreme); *id.* amend. X (reserving to states powers not

delegated); *id.* amend. XI (making states immune to suit in federal court); *Printz*,

521 U.S. at 921-23 (citing Federalist No. 51); *Lopez*, 514 U.S. at 552; *New York*,

505 U.S. at 187-88; *Gregory v. Ashcroft*, 501 U.S. 452, 457-59 (1991).  Moreover,

by expressly reserving powers to the states or the people, the Tenth Amendment

substantively reinforces the letter and spirit of the constitution by prohibiting any

constitutional interpretation of the Necessary and Proper Clause that could

consolidate all governmental power in the federal government or otherwise render

states political non-entities.  *Printz*, 521 U.S. at 923-24 (citing Federalist No. 33;

Lawson & Granger, *The "Proper" Scope of Federal Power: A Jurisdictional

Interpretation of the Sweeping Clause*, 43 Duke L. J. 267, 297-326, 330-333

(1993)).

The constitution's guarantee of a vertical separation of powers, of course, is

not an end-in-itself.  *New York*, 505 U.S. at 181.  The Founders intended for

federalism to prevent the abuse of power by diffusing concentrations of power.

*Id.* at 187-88 (observing the constitution "divides power among sovereigns and

among branches of government precisely so that we may resist the temptation to

concentrate power in one location as an expedient solution to the crisis of the

day"); *Gregory*, 501 U.S. at 458.  Consequently, the most fundamental purpose of

our federalist structure is to protect individual liberty.  *Id.* at 181-82 (citing

Federalist No. 51; *Coleman v. Thompson*, 501 U.S. 722, 759 (1991) (Blackmun, J.

dissenting); *Gregory*, 501 U.S. at 458).  As held in *New York*:

> The Constitution does not protect the sovereignty of States for the
> benefit of the States or state governments as abstract political entities,
> or even for the benefit of the public officials governing the States.
> To the contrary, the Constitution divides authority between federal
> and state governments for the protection of individuals.  State
> sovereignty is not just an end in itself: 'Rather, federalism secures to
> citizens the liberties that derive from the diffusion of sovereign
> power.' 'Just as the separation and independence of the coordinate
> branches of the Federal Government serve to prevent the
> accumulation of excessive power in any one branch, a healthy
> balance of power between the States and the Federal Government
> will reduce the risk of tyranny and abuse from either front.'

*Id.*  The letter and spirit of the constitution thus requires our system of federalism

to protect individual liberty and to prohibit any effort to consolidate power in a

way that would undercut this basic structural purpose.

In the present case, federal preemption of the Montana Firearms Freedom

Act would not merely displace state law.  Drawing every reasonable inference in

favor of Plaintiffs, such preemption would diminish individual liberty and

substantially restrict the opportunities Montanans would otherwise have to

exercise and enjoy their Second and Ninth Amendment rights.  (Motion to

Dismiss Memo., pp. 2-7.)  This is because it is reasonable to infer that Plaintiffs'

activities under the Act would result in greater availability of firearms to Plaintiffs

and other Montanans than federal law allows.  Of necessity, the Act would allow more Montanans to exercise and enjoy their individual right to keep and bear arms under the Second Amendment and their related personal right to manufacture and sell firearms under the Ninth Amendment.  Consequently, Plaintiffs' complaint supports a reasonable inference that federal preemption of the Act would undercut the fundamental structural purpose of preserving state sovereignty in our federalist system—protecting individual liberty from the concentration of power in the federal government.

If, as held in *Printz*, it violates the "very principle of separate state sovereignty" for Congress "to compromise the structural framework of dual sovereignty," 521 U.S. at 932, it would be a far greater violation of that principle for Congress to prohibit state sovereignty from serving its basic structural purpose of protecting individual liberty.  Because federal preemption of the Montana Firearms Freedom Act would do just that, Plaintiffs' cause of action should be sustained.  Simply put, when such structural principles are at issue, the judiciary must not defer to congressional judgments about the scope of implied federal power.  *Brzonkala v. Virginia Polytechnic Inst. & State Univ.*, 169 F.3d 820, 895-97 (4th Cir. 1999), *aff'd*, *United States v. Morrison*, 529 U.S. 598 (2000) (observing "[t]he judiciary rightly resolves structural disputes").

**Conclusion**

Above and beyond the "great latitude" the states enjoy in the exercise of their police powers over public health and safety, *Gonzales v. Oregon*, 546 U.S. 243, 270 (2006), our federalist system guarantees the states (and the people) decentralized autonomy to experiment with heightened protections of individual liberty.  *Gregory*, 501 U.S. at 458; s*ee generally* William Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489 (1977).  From this perspective, it is totally inconsistent with the letter and spirit of the constitution for the federal government to claim the implied power to preempt the Montana Firearms Freedom Act.  For this reason, Defendants' Rule 12(b)(6) motion to dismiss should be denied.

**RESPECTFULLY SUBMITTED** on this 9th day of April, 2010 by:

/s/ Nicholas C. Dranias
Scharf-Norton Ctr. for Const. Litigation
GOLDWATER INSTITUTE
Nicholas C. Dranias
500 E. Coronado Rd.
Phoenix, AZ 85004
P: (602) 462-5000/F: (602) 256-7045
ndranias@goldwaterinstitute.org
Attorneys for Amicus Goldwater Institute, et al

/s/ Timothy C. Fox
Timothy C. Fox
Gough, Shanahan, Johnson & Waterman
33 South Last Chance Gulch
P.O. Box 1715
Helena, MT 59624-1715

Tel: 406-442-8560
Fax: 406-449-0208
tcf@gsjw.com
Local counsel for Amicus Goldwater Institute, et al

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(D)(2)(E)**

The undersigned certifies that this brief contains 1,766 words, excluding

signatures, caption and certificates of service and compliance.

/s/ Nicholas C. Dranias

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon the

following individuals by ECF this 9th day of April, 2010.

Quentin M. Rhoades
Sullivan Tabaracci & Rhoades
1821 South Ave West
Third Floor
Missoula, MT 59801
406-721-9700
406-721-5838 (fax)
qmr@montanalawyer.com

Eric H. Holder, Jr.
Alexander Haas
Attorney General of The United States of America
U.S. Dept of Justice, Civil Div.
950 Pennsylvania Ave.. NW
Room 7258
Washington. D.C. 20630
Alexander.Haas@usdoj.gov

/s/ Nicholas C. Dranias