UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____
MONTANA SHOOTING SPORTS     )
ASSOCIATION, et. al.,       )
                            )    09-CV-147-DWM-JCL
     Plaintiffs,            )
                            )    Defendant's Response to
v.                          )    Plaintiffs' and
                            )    Intervenor's Objections to
                            )    Findings and
ERIC H. HOLDER, JR.         )    Recommendations
                            )
     Defendant.             )
_____ )

Plaintiffs Montana Shooting Sports Association, the Second Amendment Foundation, and Gary Marbut filed their Objections to Judge Lynch's Findings and Recommendations on September 14, 2010.[1]  Rather than registering specific objections to the Magistrate's Report as 28 U.S.C. § 636(b) requires, the plaintiffs offered conclusory objections to each of the Magistrate's findings.  These generalized objections, absent supporting legal authority, do not invoke the district court's obligation to perform a *de novo* review of the Magistrate Judge's decision.

---

[1] On September 13, 2010, the State of Montana objected to Judge Lynch's application of *Gonzales v. Raich*, 545 U.S. 1 (2005) and *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006), to the facts of this case.  Though this point was discussed at length in the parties' briefs and at oral argument, defendant will specifically address the State's objection in Part III of this Memorandum.

1

To the extent plaintiffs seek leave to amend their Complaint a third time, the Court should deny their request. Plaintiffs have twice utilized the liberal amendment provisions under the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 15(a)(2), to bolster their standing claims. Furthermore, defendant pointed out plaintiffs' failure to raise a Second Amendment claim in his Reply brief, filed with the Court on May 18, 2010. Plaintiffs, however, waited nearly four months before attempting to clarify their pleadings. Finally, and as explained in further detail below, amendment of the Complaint in this instance would be futile as plaintiffs' Second Amendment arguments are without merit.

**I.     De Novo Review is Not Required Because Plaintiffs Registered Only Generalized and Conclusory Objections to the Entirety of the Magistrate's Findings and Recommendations.**

According to 28 U.S.C. § 636(b), "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." The statute directs district judges to make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the magistrate's recommendation. *See Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974), cert. denied, 419 U.S. 879, quoted in House Report No. 94-1609, 94th Cong. 2d Sess. (1976) at 3.

Objections to a magistrate's report must be specific and clear enough to enable the district court to determine which issues remain in dispute. *See* Fed. R. Civ. P. 72(b)(2) (permitting a party to serve and file *specific written objections* to the proposed findings of the Magistrate) (emphasis added); *Sullivan v. Schriro*, No. CV 04-1517-PHX-DGC, 2006 WL 1516005, at *1 (D. Ariz. May 30, 2006) (citing cases). In addition, and as courts in the Ninth Circuit have recognized, Congress created magistrate judges to provide district judges "additional assistance in dealing with a caseload that was increasing far more rapidly than the number of judgeships." *Hagberg v. Astrue*, No. CV 09-01-BLG-RFC-CS0, 2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009) (quoting *Thomas v. Arn,* 474 U.S. 140, 153 (1985) (internal quotations omitted)). Accordingly, "[t]here is no benefit if the district court is required to review the entire matter *de novo* because the objecting party merely repeats the arguments rejected by the magistrate. In such situations, this Court follows other courts that have overruled the objections without analysis." *Id.* (citing *Sullivan*, 2006 WL 1516005, at *1).

Plaintiffs in this case recited twelve general objections to each of Judge Lynch's Findings and Recommendations, entered on August 31, 2010. *See* Plaintiffs' Objections ("Pl. Obj.") at 2-3. Plaintiffs did not object to Judge Lynch's factual findings, nor did they specify particular areas of disagreement with the Magistrate's analysis. Plaintiffs also failed to point to any legal authority in

support of their objections to the Magistrate's findings regarding jurisdiction and Congress's power to regulate the manufacture and sale of firearms under the Commerce Clause.[2] Rather, plaintiffs stated that their objections "are all based on the arguments of [p]laintiffs and the amicus curiae, as set forth in the briefs filed in opposition to [d]efendant's motion to dismiss," *id.* at 4 (internal citation omitted), and incorporated those arguments by reference. *See id.*

Therefore, plaintiffs' objections have not assisted this Court in discerning "those issues that [are] dispositive and contentious" and do not justify *de novo* review. *Howard v. Secretary of Health and Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991) (a general objection to a magistrate's report, which fails to specify the issues in contention, does not satisfy the requirement that an objection be filed); *Veney v. Astrue*, 539 F. Supp. 2d 841 (W.D. Va. 2008) (a general objection to the entirety of the magistrate's report has the same effects as would a failure to object). Where, as here, "a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48,

---

[2] Plaintiffs did cite *McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020 (2010) as additional support for their Second Amendment argument. *See id.* at 4. As discussed in further detail *infra* Part II, plaintiffs' reliance on *McDonald* is misplaced. That decision provides no support for plaintiffs' claim that the Second Amendment confers an unfettered right to manufacture and sell firearms.

51 (E.D.N.Y. Feb. 13, 2008) (quoting *Barratt v. Joie*, No. 96-cv-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002).

## II. Plaintiffs Should Not be Permitted to Amend Their Complaint to Raise a Second Amendment Claim.

After review of plaintiffs' Second Amended Complaint, Judge Lynch found that "[p]laintiffs have not pled a Second Amendment claim in this case." Lynch Findings & Recommendations ("Lynch F.R."), Aug. 31, 2010 (Dkt. No. 103). The Magistrate noted that plaintiffs failed to "allege that their Second Amendment rights have been violated, and their prayer for declaratory relief does not even mention the Second Amendment." *See id.* In response, plaintiffs seek leave to amend their Complaint a third time to properly raise a Second Amendment claim.

According to Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Though "[t]he court should freely give leave when justice so requires," *id.*, a district court may deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 532 (9th Cir.2008) (quoting *Foman v. Davis,* 371 U.S. 178, 182, (1962)). Where the plaintiff has previously been granted leave to amend and has

5

failed to adequately detail its claims, "[t]he district court's discretion to deny leave to amend is particularly broad." *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal citation omitted).

As noted in Judge Lynch's Findings and Recommendations, plaintiffs have twice amended their Complaint to strengthen their allegations with respect to standing and final agency action. *See* Lynch F.R. at 4. Their Second Amended Complaint, for example, was filed in direct response to the jurisdictional weaknesses pointed out by the defendant in his Motion to Dismiss. In addition, plaintiffs were able to supplement their Complaint after defendant filed his Reply Memorandum on May 18, 2010. In a sixty page exhibit to their Motion to File a Surreply, plaintiffs presented new information regarding Mr. Marbut's intent to manufacture and sell the Montana Buckaroo Rifle and certain "non-lethal" ammunition under the Montana Firearms Freedom Act ("MFFA").

Plaintiffs now seek permission to amend a third time and include the Second Amendment claim they previously failed to make, continuing a pattern of dilatory and repeated amendment of their pleadings. The defendant called specific attention to plaintiffs' failure to raise a Second Amendment violation as early as May 18, 2010. *See* Defendant's Reply at 38. Yet when plaintiffs filed a Motion for Surreply on June 2, 2010, they said nothing about the Second Amendment nor did they seek leave to amend at that time. Furthermore, plaintiffs did not discuss

their pleading of a Second Amendment claim at oral argument. Instead, plaintiffs waited to raise the prospect of amendment until after Judge Lynch directly addressed the issue. Plaintiffs' delay not only prejudices the defendant, but defeats the principles of judicial economy and efficiency underlying the Magistrate Judge's jurisdiction.

Moreover, amendment to state a claim under the Second Amendment would be futile in this case. *Bonin v. Calderon,* 59 F.3d 815, 845 (9th Cir.1995) (a court may deny leave to amend if amendment would be futile); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962). An amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Hanson v. Cascade County Attorney's Office*, No. CV 08-53-GF-SEH-RKS, 2009 WL 5083499, at *1 (D. Mont. Nov. 19, 2009) (quoting *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988)).

In their Objections to Judge Lynch's Findings and Recommendations, plaintiffs maintain that the basis for their Second Amendment claims "arose from the United States Supreme Court case of *McDonald v. City of Chicago*, decided . . . over a month after the [g]overnment's reply brief was filed on the issue." Pl. Obj. at 4 (internal citation omitted). Even under *McDonald*, however, which said nothing about extending Second Amendment protection to firearm manufacturers or dealers, plaintiffs' claims would not survive scrutiny. *McDonald* merely

clarified that the Fourteenth Amendment incorporates the Second Amendment right, recognized in *District of Columbia v. Heller,* to keep and bear arms for the purpose of self-defense. *See McDonald*, 130 S. Ct. at 3035-36, 3050 (citing *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008)). In applying that right to the States, the Court was careful to adopt *Heller*'s limited definition of the Second Amendment and the individual right that it confers. *See id.*

As defendants pointed out in their briefing, plaintiffs and amici assume that the Court's interpretation of the Second Amendment as conferring an *individual* right to bear arms, also supports a State statute that wholly deregulates the manufacture and sale of firearms to *others*. However, this assertion finds no support in the language of *Heller*, which stated that restrictions on the manufacture and sale of firearms were "presumptively lawful," *id.* at 2816-17, n.26, nor in *McDonald* which re-emphasized that regulations on the commercial sale of arms are fully consistent with the Second Amendment: "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or *laws imposing conditions and qualifications on the commercial sale of arms*.' " *McDonald*, 561 U.S. at 3047 (quoting *Heller*, 128 S. Ct. at 2816-17 (emphasis added)). The Majority went on to assure that the Second

8

Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 3047 (quoting *Heller*, 128 S. Ct. at 2816). "Incorporation," noted the Court "does not imperil every law regulating firearms." *Id.*

Finally, it is important to emphasize that neither *Heller* nor *McDonald* disturbed prior holdings refusing to extend Second Amendment protection to firearm manufacturers. Before the Supreme Court's decision in *Heller*, courts assumed that there was "no Second Amendment right to be a firearm manufacturer or dealer." *Olympic Arms v. Magaw*, 91 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000), *aff'd Olympic Arms, et al. v. Buckles*, 301 F.3d 384 (6th Cir. 2002). While the court in *Olympic Arms* noted that the Second Amendment did not, at that time, confer an individual benefit, *see Olympic Arms*, 91 F. Supp. at 1071, this distinction did not affect the court's definition of the underlying right itself. The right to "bear" arms did not also include the right to manufacture and sell them. *See id.*; *see also United States v. King*, 532 F.2d 505, 510 (5th Cir. 1976) (defendant who was convicted of manufacturing and selling firearms without a license could not contend that statutes violated his right to bear arms); *Gilbert Equip. Co. v. Higgins*, 709 F. Supp. 1071, 1080-81 (S.D. Ala. 1989) (plaintiff did not have the right to import firearms because the right to keep and bear arms under the Second Amendment does not include the right to produce and acquire them).

Taken together, *Heller* and *McDonald* establish an individual right, applicable to the States, to possess a firearm for self-defense in the home. Those cases do not imply the broad interpretation of the Second Amendment advanced by plaintiffs and amici with respect to the MFFA. Rather, both decisions support defendant's argument that Federal regulation of the intrastate manufacture and sale of firearms is lawful.

### III. The State of Montana's Objections to Judge Lynch's Commerce Clause Analysis are Not Persuasive.

In its Brief in Intervention, the State of Montana argued that this case should be distinguished from the Supreme Court's holding in *Gonzales v. Raich*, because *Raich* concerned a fungible item that was impossible to distinguish in the stream of commerce. *See* State of Montana's Brief ("Mont. Br.") at 10. Firearms manufactured under the MFFA, in contrast, must have the words "Made in Montana" clearly stamped on a central metallic part, such as the receiver or frame. *See id.*

The State objected to Judge Lynch's conclusion regarding the immateriality of this distinction, and his finding that MFFA-firearms are fungible when they enter the stream of commerce. *See* State of Montana's Objections ("Mont. Obj.") at 3-4. Indeed, the State's argument ignores the "concern about [marijuana's] diversion into illicit channels" emphasized by the Majority in *Raich*. That concern

is no less important in this case, where an illegal market for firearms exists across state lines. Although stamped "Made in Montana," firearms produced and sold under the MFFA may be diverted into the hands of those otherwise prohibited by Federal law, whether within Montana or outside its borders. Once these firearms leave Montana, nothing beyond their "Made in Montana" label permits tracing by the Federal government. The firearms need no serial number, no records of sale, receipt, or transport. In essence, Montana will create weapons that are readily accessible to those who seek to avoid a background check, with no record of transaction and no markings with which to discern a chain of custody. The fact that MFFA-firearms would be untraceable renders them fungible commodities, particularly from the perspective of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

As the Ninth Circuit emphasized in *United States v. Stewart*, "fungibility is a matter of degree." 451 F.3d 1071, 1078 (9th Cir. 2006). The court theorized that those seeking machineguns are not concerned with whether the guns traveled in interstate commerce, but rather whether they "work effectively – whether they discharge large amounts of ammunition with a single trigger pull." *Id.* Similarly, a "Made in Montana" stamp will not deter someone wishing to purchase a firearm but prohibited from doing so under Federal law. To borrow Judge Kozinski's

analogy, that person cares only that the weapon itself is functional and fires bullets. *See id.*

Although not essential to the correctness of Judge Lynch's conclusion, it is important to recognize that Montana is not alone in adopting legislation that circumvents the Federal firearms laws. Once the six States that have enacted similar statutes begin producing firearms, a steady supply of untraceable weapons will infiltrate the interstate market. These guns are interchangeable with, and – in the case of persons who wish to avoid monitoring by ATF – more desirable than, those produced and sold in accordance with Federal law. It is difficult to see how the MFFA, by potentially stimulating the illicit interstate market in firearms, does not "substantially affect" commerce.

## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that the Court adopt the Magistrate Judge's Findings and Recommendations in full and grant the Motion to Dismiss submitted by the United States.


Dated: September 27, 2010						Respectfully submitted,

								TONY WEST
								Assistant Attorney General

								MICHAEL W. COTTER
								United States Attorney

SANDRA SCHRAIBMAN
Assistant Branch Director

/s/ Jessica B. Leinwand
Jessica B. Leinwand
Trial Attorney (N.Y. Bar)
U.S. Department of Justice
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 305-8628
Fax: (202) 616-8470
Jessica.B.Leinwand@usdoj.gov

OF COUNSEL:

MELISSA ANDERSON
Bureau of Alcohol, Tobacco,
Firearms & Explosives
99 New York Avenue, N.E.
Washington, D.C. 20226
Tel: (202) 648-7056
Melissa.Anderson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on September 27, 2010, a copy of this Response to Plaintiffs' and Intervenor's Objections to Judge Lynch's Findings and Recommendations was served upon counsel of record by electronic means through electronic filing.

s/ Jessica B. Leinwand
Jessica B. Leinwand
